## Case No. 10,082.

### NEEDHAM v. WASHBURN et al.

[1 Ban. & A. 537; 4 Cliff. 254; 7 O. G. 649;
Merw. Pat. Inv. 247.] [1]

Circuit Court, D. Massachusetts. Oct., 1874.

PATENTS — PATENTABLE INVENTION — CASTING
WHEELS — PRIOR STATE OF ART — PRACTICE —
RESPONDENT CORPORATION SUED AS COPART-
NERSHIP—AMENDMENT.

1. Whether, in a suit brought against the re-
spondents as copartners, but in which the proofs
fail to show a partnership, but do show that the
respondents, with others, were organized into a
corporation, with the same name as the alleged
copartnership, it would be competent for the
court to enter a decree against the corporation,
quaere.

[Cited in Brown v. Piper, 91 U. S. 43.]

2. In such case the court will not delay the
hearing of the cause: since the defect, if it be
one, may be cured by an amendment. Citing
Goodyear v. Phelps [Case No. 5,581], and Pop-
penhusen v. Falke [Id. 11,279].

3. Prior to the complainant's patent for an
improvement in casting car wheels, steel tires,
previously heated to a required degree of heat,
were placed in the mould in which the body of
the wheel was to be cast, the flask immediately
closed, and the molten iron poured into the
mould through one or more openings or sprues
in its centre, a suitable flux being employed to
promote the welding of the two metals, which,
when cool formed one solid mass. The evi-
dence showed, that iron and steel had, from time
immemorial, been welded, both with and with-
out a flux: *Held*, that it was not a patentable
invention, but merely the product of ordinary
mechanical skill, in the casting of wheels in this
method, to pour the molten iron through open-
ings or sprues made just inside the inner edge
of the steel tire instead of at the centre of the
mould, for the purpose of preventing particles of
foreign matter being carried by the flowing
metal to the points of union of the two metals,
and, thereby, preventing a perfect weld: *Held*,
also, that the state of the art showing that iron
and steel had long previously been welded both
with and without the medium of a flux, and that
mechanics skilled in the art differed in opinion
as to the utility of any flux, it was not a patent-
able subject to cast car wheels in the manner
described, but with the omission of a flux pre-
viously used.

[Cited in Snow v. Taylor, Case No. 13,148;
Cone v. Morgan Envelope Co., Id. 3,096;
Alcott v. Young, Id. 149.]

[This was a bill by Chandler Needham
against Nathan Washburn and others to re-
strain the alleged infringement of letters pat-
ent No. 110,779, granted to the complainant
January 3, 1871.]

J. B. Robb, for complainant.

A. K. P. Joy, for defendants.

CLIFFORD, Circuit Justice. Letters pat-
ent may be granted for the invention or dis-
covery of any new and useful art, machine,
manufacture or composition of matter, or
of any new and useful improvement of the
same, upon the conditions specified in the
patent act. Unless the thing claimed as the

[1] [Reported by Hubert A. Banning, Esq., and
Henry Arden, Esq., and by William Henry Clif-
ford, Esq.; and here compiled and reprinted by
permission. Merw. Pat. Inv. 247, contains only
a partial report.]

invention is new and useful, the claim is
wholly without merit, as that is the primary
and indispensable condition annexed to the
right to claim the protection which the pat-
ent act is intended to secure. Application in
writing must be made to the commissioner,
and the requirement is, that the applicant
shall file in the patent office, a written de-
scription of the invention or discovery, and
of the manner and process of making, con-
structing, compounding, and using it, in such
full, clear, concise, and exact terms as to en-
able any person skilled in the art or science
to which it appertains, or with which it is
most nearly connected, to make, construct,
compound, and use the same. 16 Stat. 201.
Patents granted by the commissioner, in pur-
suance of those conditions, afford a prima
facie presumption, when introduced in evi-
dence, that the patentee is the original and
first inventor of what is therein described as
his invention or discovery. Such a presump-
tion, however, may be controlled by evidence
of a prior knowledge or use by others in this
country; or that the invention or discovery
had been described in any printed publication,
before his invention or discovery thereof, in
this or any foreign country; or, that it had
been in public use, or on sale, for more than
two years prior to his application for a pat-
ent.

Damages are claimed by the complainant
for an alleged infringement by the respond-
ents of certain letters patent, granted to him,
in which it is represented, that he is the or-
iginal and first inventor of a certain new and
useful improvement in casting car wheels, as
more fully described in the specification of
the letters patent. Process was served, and
the four persons named as respondents in the
bill of complaint appeared, and filed separate
answers. They are described in the bill of
complaint as copartners, under the name of
the N. Washburn Steel Tire Works, and the
charge is, that the respondents, without con-
sent, and in violation of the complainant's
exclusive rights, have made, sold, and used
a large number of said patented car wheels,
in infringement of the exclusive rights se-
cured to the complainant by said letters pat-
ent. Appearance was entered by each of the
respondents, and they severally set up the
following defences: 1. That they are not,
and never were, copartners doing business
at Worcester, as alleged in the bill of com-
plaint. 2. That the complainant is not the
original and first inventor of the improve-
ment. 3. That the alleged improvement was
well known and in public use, by various per-
sons, and at various places, before the alleged
invention thereof by the complainant.

Proof to show that the respondents are co-
partners is entirely wanting, but, inasmuch
as that defect, if it be one, may be removed
by a proper amendment, the court is inclined
to examine the merits of the controversy.
Before doing so, however, it may be well to
examine the proposition of the complainant,

that he is entitled to a decree against the respondents, as individuals, even though he has utterly failed to prove that they are co-partners as alleged. Partnership is certainly not proved. On the contrary, the respondents offer proof, tending to show, that they are a corporation duly established under the laws of the state in which their business is trans-acted; but the complainant denies that propo-sition, and insists that, as they were never duly incorporated, he may well maintain the present suit against them as individuals.

Besides the claim for damages, the com-plainant also prays for an account of gains and profits, and also for an injunction. Hav-ing sued the respondents as a partnership, it may be doubtful whether it would be com-petent for the court to enter a decree against the corporation, but as that defect, if it be one, may be cured by an amendment, the court will proceed to examine the merits of the controversy. Goodyear v. Phelps [Case No. 5,581]; Poppenhusen v. Falke [Id. 11,279].

Taken as a whole, the proofs in the case show, to the satisfaction of the court, that the persons sued as partners were, with others, organized as a corporation, in November, 1869, under the general statutes of the state, by the corporate name set forth in the pleadings, and it appears that all the corporators were made directors, and that the business of the corporation was conducted by the directors. Opposed to this, is the uncontradicted proof that no certificate, setting forth the corporate name and purpose of the association, was ever filed with the secretary of state; but the better opinion is, that the statutes of the state, in force at the time the organization was made, did not contain any such requirement, and, consequently, that the organization is not rendered illegal by that omission. Gen. St. 341. Such a requirement was enacted the next year, but this new provision is not retro-active. Supp. Gen. St. 806.

The principal defences upon the merits, are as follows: 1. That the alleged improvement is not new in the sense of the patent law, be-cause the patentee was not the original and first inventor of it, and because the process was well known and in public use, long before the date of the supposed invention. 2. Be-cause the respondents have never infringed the patent, as alleged. Both of these de-fences make it necessary to ascertain what the invention is, when the patent, which se-cures it is properly construed.

Enough may be learned from the descrip-tion given by the patentee in the specifica-tion of the process, which he pursues to manu-facture the patented car wheel, when weighed in connection with the claim of the patent, to furnish a satisfactory answer to the inquiry as to the true nature and scope of the alleged improvement. His first step, as pointed out in the specification, is to cast a suitable quan-tity of steel to form the tire of the wheel, into an annular ingot, about fifteen inches in di-ameter, with an opening at the center of its

diameter, of four inches. He then hammers the ingot upon an anvil, by means of a steam hammer, by which its diameter is extended to eighteen inches; and he gives a description of the anvil which he uses, and of the man-ner of conducting the hammering. Forming-rolls are then employed, by which the ingot is enlarged to the proper size and shape, to form the tire of the wheel. Having formed the tire, he then places it in a heated furnace, and heats it to a bright cherry red, when it is taken from the furnace, and having re-moved every foreign substance from its sur-face, he places it within the mould in which the body of the car wheel is to be cast, said mould having previously been formed and prepared for the purpose. Care, it is said, should be taken, that the heated tire should be properly adjusted in the mould; and when that is accomplished, the direction is, that the flask shall be immediately closed, and the molten iron be poured into the mould, which as it comes in contact with the highly heated steel, fuses the surface of the latter, thereby forming a perfect union between the two, and as the metal cools, the body of the wheel and the tire are welded into one solid mass. Ex-tended remarks upon that part of the de-scribed process is unnecessary, as nothing there described is embraced in the claim of the patent, and, if it had been, it would not have benefited the complainant, as every part of the process there described is substantially the same as that set forth in the patent grant-ed to Zadoc Washburn, which was introduced in evidence, and is of prior date.

Two matters are then introduced into the specification of the patent in question, which, it is insisted, distinguish it from the invention of Zadoc Washburn, which, it is admitted, is the older of the two: 1. That the molten iron is introduced into the mould, through a series of openings at the rim of the wheel, just inside the tire, and that it flows from thence to the centre, carrying away from the inner surface of the steel tire all dirt and dust, if any, which might otherwise prevent the welding of the parts. 2. Nothing is ex-pressly set forth, under the second head, as a matter pertaining to the described improve-ment, but the patentee points out what he represents as a defect in the process of the other patent, which is, that the cast iron, in-stead of lying still in the mould, and forming a perfect weld, is agitated and caused to bub-ble, by the gas generated by the molten iron as it comes in contact with the flux used in the process, whereby, as he states, the perfect and desired union of the iron and steel is prevented. Everything described in the pat-ent to Zadoc Washburn, is disclaimed by him in express terms. What he claims is, the de-scribed method of introducing the molten cast iron into the mould, through a series of holes, directly upon the inner unfluxed surface of the cast-steel tire, by which a perfect union and weld of the metals are produced.

Car wheels, manufactured by first forming

a rim of cast steel, and then heating and placing it in a mould previously prepared for the purpose, and by pouring molten cast iron into the mould to complete the manufacture of the wheel, by the union or weld between the two into one solid mass, are certainly old. Nor is that proposition denied. Nothing, therefore, but a new and useful improvement in the method or process of such a manufacture can be regarded as the proper subject of a patent. Doubtless, it may be true, that the molten iron was formerly poured into the mould at the center of the mould, and, it may be, that it is better to construct the openings in the mould for the purpose—whether they are called by that name, or are called "sprues," or conduits—just inside the inner surface of the heated rim, when placed in the mould; but the court is not satisfied, from an examination of the product, or from any evidence in the case, that such a change, without more, even if new, which is not admitted, is the proper subject of a patent, as it is scarcely possible that it could have required any invention to make it. Changes of the kind are nothing more than common knowledge and experience would suggest, and every workman, whether skilled in the art or not, would know how to apply the suggestion. Nor can it make any difference that the patentee uses a series of such openings or holes in his method or process, as the proofs are full and satisfactory, that a series of holes had been used in making such castings at a much earlier period than the date of the complainant's invention, and on several occasions, as appears by the testimony of an unimpeached witness.

Suppose that is so, still, it is insisted by the complainant, that his method or process is new and useful, because he does not use flux in making the described weld, which, as he insists, distinguishes his method or process from the invention described in the Zadoc Washburn patent, and from all others known at the date of his invention. Much reason exists for holding, that the second feature of the claim is invalid, because not embraced in the description of the method or process used by the complainant, as required by the act of congress; but, inasmuch as the alleged invention consists, merely in omitting an ingredient, often employed in welding steel and iron, or two pieces of iron, the court is not inclined to rest the decision entirely upon that ground.

Nor is it at all necessary to do so, as the court, in view of the facts and circumstances of the case, is of the opinion, that it is matter of common knowledge, that iron, or iron and steel, may be successfully welded with or without the use of flux, and that such knowledge has existed among mechanics accustomed to work at the ordinary forge, for a very long period, whereof the memory of man runneth not to the contrary. Axes, scythes, hoes, and other farming utensils were formerly made on the common anvil; and it is believed, that mechanics, formerly engaged in manufacturing such articles, knew full well that flux was often omitted in effecting a weld of iron, or iron and steel. Horse shoes were made in the same manner, and many larger articles, such as ploughshares and mill cranks. Differences of opinion, it is known, have at times existed among mechanics of that class upon the subject, some maintaining that flux was useful, and even necessary, and others maintaining the opposite opinion, with equal earnestness and confidence. All of these suggestions, it is believed, are supported by common experience and knowledge, but it is not necessary to go out of the record to find convincing proof to the same effect. Even the complainant, in his deposition filed in the patent office, testified in his cross-examination, that he was aware that iron and steel had been so welded; and, when asked if he knew, as a matter of fact, that iron and steel had for a long time been welded with and without flux, stated that it was said to have been so welded for a long time. Support to that view is also derived from one of the respondents' witnesses, who says, that in making four or five car wheels, they used four sprue holes, and that some of them were made with flux, and some without; which statement is also confirmed by other witnesses.

Having come to the conclusion that the alleged infringement is not new or patentable, it is not necessary to examine the question of infringement. Bill of complaint dismissed, with costs.